IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KLAMATH SISKIYOU WILDLANDS )
CENTER, et al., )
 )
       Petitioner, )  No. CV 05-3094-CL
 )
       v. )
 )  **OPINION AND ORDER**
BUREAU OF LAND MANAGEMENT, )
 )
       Respondent. )
_____)

**PANNER, J.**

On August 6, 2007, Magistrate Judge Clarke filed his Report and Recommendation (docket # 92). Plaintiffs timely objected. The matter is now before me for de novo review pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b).

## Background

Plaintiffs brought this action against the Bureau of Land Management (BLM) to challenge the proposed Willy Slide timber sale. Plaintiffs sought a preliminary injunction; a declaration that the challenged decision violated certain laws; a permanent injunction against the project until the BLM complied with those laws; and an award of costs and attorney fees. On January 9,

1 - ORDER

2006, Magistrate Judge Cooney approved a briefing schedule, along with a stipulation between the parties which stated that:

> 1. The Willy Slide Timber Sale is subject to seasonal restrictions that prohibit actions on the sale from October 15 until May 15, unless permitted by the Authorized Officer. Defendant agrees not to award the contract for the Willy Slide Timber Sale and agrees to stay any authorization of timber sale activities until . . . . . any objections to the Magistrate's Findings and Recommendations have been ruled upon . . . unless the Parties' cross-motions for Summary Judgment and any subsequent objections to the Magistrate's Findings and Recommendations have not been resolved on or before May 15, 2006.
>
> 2. Plaintiffs retain the option of moving for a preliminary injunction should it become apparent that a decision on the merits will not be reached before May 15, 2006.

The parties filed and fully briefed cross-motions for "summary judgment."[1] On May 2, 2006, the motions were argued and taken under advisement.

On November 6, 2006, the Ninth Circuit decided <u>Klamath Siskiyou Wildlands Center v. Boody</u>, 468 F.3d 549. All parties to the instant action were parties in <u>Boody</u>, though different timber sales were challenged. The following day, Magistrate Judge Cooney conducted a telephone conference with the parties, then filed his 39-page Findings and Recommendation. After summarizing the relevant law and history of this action, Judge Cooney stated:

---

[1] Summary judgment standards and procedures are usually not appropriate when reviewing a decision on an administrative record. Appeals from agency decisions ordinarily should be briefed appellate style.

> This court finds <u>Boody</u> directly on point.
> Therefore, plaintiffs are entitled to summary
> judgment on part of the first claim, their third
> claim, and their fifth claim. The [Willy Slide
> timber sale] violates FLPMA and NEPA. The court
> finds that the [Willy Slide timber sale] is
> invalid and plaintiffs are entitled to an
> injunction.

Findings & Recommendation (# 48) at 37-38 (internal citations omitted). In light of that disposition, Judge Cooney recommended that the court not reach Plaintiffs' other claims. <u>Id.</u> at 38.

That same day, the BLM vacated the agency's earlier rulings and granted Plaintiffs' protest of the Willy Slide Timber Sale. The decision letter cited the protest previously filed by Plaintiffs (which the agency had denied), "the complaint" Plaintiffs filed in the present action, "and recent case law pertaining to similar activities and NEPA analysis . . . . " Symons Letter of November 7, 2006, p. 2.

The BLM then moved to dismiss this action as either moot, or not ripe, because--"in light of the Ninth Circuit's ruling" in <u>Boody</u>-- the agency had withdrawn the challenged timber sale. "At this time, BLM has yet to decide whether to: (1) cancel the Willy Slide project, (2) modify the Willy Slide project after conducting additional environmental analysis and decisionmaking, which includes an administrative protest period; or (3) proceed with the Willy Slide project as originally designed after conducting additional environmental analysis and decisionmaking consistent with the Ninth Circuit's ruling in [<u>Boody</u>] . . . ."

3 - ORDER

Defendant's Memorandum in Support of Motion to Dismiss, pp. 4-5.

Plaintiffs opposed the motion to dismiss, and also objected to the Magistrate Judge's recommendation that this court not decide Plaintiffs' other claims. On March 16, 2007, I dismissed Plaintiffs' claims as moot or unripe. Plaintiffs did not appeal.

Plaintiffs then sought an award of costs and attorney fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. Defendant objected, arguing (1) this court lacks jurisdiction to award fees and costs, (2) Plaintiffs are not prevailing parties, (3) the government's position was substantially justified, and (4) the fees requested are excessive.

Magistrate Judge Clarke--assigned to this case following the retirement of Judge Cooney--recommended denying Plaintiffs' motion for fees in its entirety, citing Defendant's first two arguments. Plaintiffs filed objections.

## Discussion

**1. Subject Matter Jurisdiction**

This court has subject matter jurisdiction over Plaintiffs' request for costs and attorney fees, notwithstanding Defendant's belated withdrawal of the challenged decision after it became clear Defendant would lose this case.

The government relies on Clark v. Busey, 959 F.2d 808 (9th Cir. 1992), which dismissed a fee petition for want of jurisdiction after determining the plaintiff had filed the underlying action in the wrong court. Subsequent Ninth Circuit cases limit Clark to circumstances where, as in Clark, the court

lacked jurisdiction from the outset. See United States v. 87 Skyline Terrace, 26 F.3d 923, 928 (9th Cir. 1994). See also Carbonell v. I.N.S., 429 F.3d 894 (9th Cir. 2005) (awarding fees under EAJA, though case mooted by voluntary actions of defendant, and implicitly assuming court had jurisdiction). Cf. Molski v. Levon Investments, LLC, 231 Fed. Appx. 685 (9th Cir. 2007) ("Since the district court lacked jurisdiction over the underlying case or controversy *from the outset*, it also lacked jurisdiction to consider Levon's motion for attorney's fees") (emphasis added).[2]  Likewise, in both precedents cited by Clark, jurisdiction was lacking from the outset. See Johns-Manville

---

 2  Friends of the Nestucca, Inc. v. Slater, 1997 WL 579109 (9th Cir. (Or.) 1997), an unpublished decision, concluded Clark is inapposite "where jurisdiction exists at the beginning of the lawsuit, but it is later defeated by settlement, or by the prevailing party obtaining the relief it desires") (citing Montes v. Thornburgh, 919 F.2d 531, 538 (9th Cir. 1990) and Andrew v. Bowen, 837 F.2d 875, 877 (9th Cir. 1988)).

 The Ninth Circuit applies a similar rule when considering fees outside the EAJA context. Cf. Association of California Water Agencies v. Evans, 386 F.3d 879, 881 (9th Cir. 2004) (awarding attorney fees against United States, though "case was dismissed as moot, after Defendants had settled a separate, but related case in another district, resulting in a remand of the designations of the very same critical habitats at issue in this case"); Watson v. County of Riverside, 300 F.3d 1092 (9th Cir. 2002) (fees may be awarded under 42 U.S.C. § 1988, even though the case became moot prior to trial); Barrios v. California Interscholastic Federation, 277 F.3d 1128, 1134 n.5 (9th Cir. 2002) (parties agreed the court retained jurisdiction over attorney fee claim, even though action was dismissed following a settlement); Williams v. Alioto, 625 F.2d 845, 848 (9th Cir. 1980) ("Claims for attorneys' fees ancillary to the case survive independently under the court's equitable jurisdiction, and may be heard even though the underlying case has become moot"); Reiser v. Del Monte Properties Co., 605 F.2d 1135, 1140 (9th Cir. 1979) (court had jurisdiction to award attorney fees even though defendants' actions caused securities claim to become moot).

Corp. v. United States, 893 F.2d 324 (D.C. Cir. 1989) (filed in wrong court); Lane v. United States, 727 F.2d 18 (1st Cir. 1984) (action barred, at outset, by tax anti-injunction statute).

Zambrano v. Immigration and Naturalization Service, 282 F.3d 1145, *amended*, 302 F.3d 909 (9th Cir. 2002), is not to the contrary. In Zambrano, the district court initially believed it had jurisdiction and granted some relief. An intervening Supreme Court decision made it apparent that some claims were never ripe, and the remainder had been filed in the wrong court. Id. at 1147-48. Consequently, the district court never had jurisdiction to begin with, and could award no fees.[3]

The language of EAJA, 28 U.S.C. § 2412(d)(1)(A), supports the distinction between cases in which the court never possessed jurisdiction, versus those mooted by the decision of the United States to grant the relief sought by the plaintiff:

> [A] court shall award to a prevailing party other than the United States fees . . . incurred by that party in any civil action . . . including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action . . . .

---

[3] The Zambrano plaintiffs then sought to plead new claims. The district court determined it had jurisdiction. The government filed an interlocutory appeal. The Ninth Circuit dismissed, citing an intervening statute divesting the court of jurisdiction over such claims. However, the Plaintiffs did not request fees for any work done after the first appeal. "Thus, we are not confronted with the question of whether Congress, as opposed to a higher court deciding jurisdictional issues on direct appeal, may eliminate the possibility for fees under the EAJA by passing a retroactive, jurisdiction-stripping statute." Zambrano, 282 F.3d at 1150, n.3.

This proceeding for judicial review of agency action was brought against the United States in a court having jurisdiction over that action. By contrast, in Clark, the action was filed in the wrong court, and thus not "brought . . . in any court having jurisdiction of that action." § 2412(d)(1)(A).

If the government's argument were correct, an award of attorney fees under EAJA would be the rare exception. If defeat seemed imminent, the government could evade liability for attorney fees by granting the relief sought by the plaintiff (or voluntarily dismissing, if the United States is the plaintiff), thereby mooting the action.

Common sense, and decades of historical practice, caution against adopting the position urged by the government here.[4] Also undermining the government's argument are the many cases involving the "catalyst theory" formerly endorsed by most circuits. See Buckhannon Board and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources, 532 U.S. 598, 602 n.3 and 626, n.4 (2001). Courts awarding fees under the catalyst

---

[4] For instance, an analogous situation occurs in social security disability cases. After reviewing a plaintiffs' opening brief, the government will sometimes request a remand to the agency for reconsideration and additional proceedings. This effectively moots the litigation. See Shalala v. Schaefer, 509 U.S. 292, 299-302 (1993) (sentence four remand for further administrative proceedings terminates litigation, regardless of outcome on remand). When a remand motion is granted, attorney fees routinely are awarded to the plaintiff, and the government routinely pays those awards without protest. Cf. Li v. Keisler, ___ F.3d ___, 2007 WL 2800679 (9th Cir. Sept. 27, 2007) (awarding fees under EAJA when, after reviewing appellants' opening briefs, government requested remand to agency for reconsideration).

theory necessarily believed they had jurisdiction. Even the one circuit that rejected the catalyst theory did not question the court's jurisdiction, but only whether the plaintiffs were prevailing parties. S-1 by and through P-1 v. State Bd. of Educ. of North Carolina, 21 F.3d 49 (4th Cir. 1994) (en banc).

In Buckhannon, the state Legislature repealed a law, mooting a pending challenge to that law. The plaintiffs then sought attorney fees, arguing that their lawsuit was the catalyst for the repeal. A majority of the Supreme Court rejected the catalyst theory--at least in the context presented in that case--concluding the plaintiffs were not "prevailing parties" for purposes of the fee statute at issue. Three opinions were filed, expressing divergent views of the term "prevailing party," yet no opinion intimated that the Court lacked jurisdiction to consider the fee petition.

This court has jurisdiction to consider the fee petition.

## 2. **Prevailing Party**

In Hewitt v. Helms, 482 U.S. 755 (1987), the Court stated:

> It is settled law . . . that relief need not be judicially decreed in order to justify a fee award under [42 U.S.C.] § 1988. A lawsuit sometimes produces voluntary action by the defendant that affords the plaintiff all or some of the relief he sought through a judgment-*e.g.*, a monetary settlement or a change in conduct that redresses the plaintiff's grievances. When that occurs, the plaintiff is deemed to have prevailed despite the absence of a formal judgment in his favor.

Hewitt, 482 U.S. at 760-61.

In Buckhannon, the Court retreated from that position, though how far remains to be seen. The majority concluded the *sine qua non* of a "prevailing party" is a "material alteration of the legal relationship of the parties" that has been "judicially sanctioned"--also referred to as a "judicial imprimatur on the change." Id., 532 U.S. at 604-05. Otherwise, a plaintiff might recover attorney fees merely by withstanding a motion to dismiss. Id. The majority also worried a defendant might hesitate to alter its conduct for reasons unrelated to the lawsuit, for fear of then being liable for attorney fees. Id. at 608.

Two Justices filed a concurring opinion which acknowledged the term "prevailing party" traditionally includes "the party that wins the suit or obtains a finding (*or an admission*) of liability." Id. at 615 (emphasis added). The concurrence then observed:

> As the dissent would have it . . . the Court today approves the practice of denying attorney's fees to a plaintiff with a proven claim of discrimination, simply because the very *merit* of his claim led the defendant to capitulate before judgment. That is not the case . . . . What the dissent's stretching of the term produces is something more, and something far less reasonable: an award of attorney's fees when the merits of the plaintiff's case remain unresolved-when, for all one knows, the defendant only "abandon[ed] the fray" because the cost of litigation-either financial or in terms of public relations-would be too great.

Id. at 616-17 (emphasis in original).

The remaining four Justices endorsed the catalyst theory, and dissented. Thus six Justices appear to have agreed that a party has prevailed if "the very merit of his claim led the defendant to capitulate before judgment," id., providing the party also can point to a judicially-sanctioned change in the relationship of the parties that gives the plaintiff at least some of the relief he sought in the litigation.

Post-Buckhannon decisions in this Circuit generally apply a pragmatic approach, inquiring whether (1) the party seeking fees gained at least part of the relief sought, (2) the victory received a judicial imprimatur of some sort, and (3) whether that victory was later reversed on the merits. See Li, 2007 WL 2800679; Carbonell, 429 F.3d at 899-902; Watson, 300 F.3d at 1096.

In the present action, Plaintiffs first obtained an enforceable stipulation from Defendant staying the project until a specified date, and foregoing Defendant's right to request permission from the authorized officer (an employee of Defendant) to proceed sooner. This material alteration in the legal status of the parties was part of the relief sought by Plaintiffs in this action, and received a judicial imprimatur when Judge Cooney entered an order approving that stipulation. Cf. Li, 2007 WL 2800679 (order by Circuit Mediator, granting unopposed motion, was sufficient judicial imprimatur); Carbonell, 429 F.3d at 899-902 (stipulated stay of deportation sufficient); Watson, 300 F.3d at 1096 (preliminary injunction sufficient); Labotest, Inc. v.

Bonta, 297 F.3d 892, 895 (9th Cir. 2002) ("plaintiff who obtains a court order incorporating an agreement that includes relief the plaintiff sought in the lawsuit is a prevailing party").

By itself, this stipulation would be a slender reed on which to base prevailing party status. Unlike a preliminary injunction, the stipulation was not even the product of a court's preliminary evaluation of the merits. Had Plaintiffs gone on to lose this action on the merits, the stipulation would not have independently justified an award of fees. See Sole v. Wyner, ___ U.S. ___, 127 S. Ct. 2188, 2196 (2007) (one who obtains a preliminary injunction, but then loses on merits, is not a prevailing party); Watson, 300 F.3d at 1096. But Plaintiffs did not lose this action.

Instead, Judge Cooney recommended granting summary judgment for Plaintiffs and enjoining the project. That recommendation did not, in itself, materially alter the legal relationship of the parties. A Magistrate Judge's Findings and Recommendation may foreshadow the likely outcome of the case, but the same could be said of remarks made by a judge at oral argument.

However, Defendant then withdrew the Record of Decision, and agreed to undertake further environmental review as Plaintiffs had demanded in their Complaint. The relief Plaintiffs received from the BLM was judicially enforceable. Had the BLM sought to renege on the commitment made in the Symons letter, Plaintiffs would have been entitled to an injunction against proceeding with

that project.[5]  Moreover, this court's order dismissing the action as moot was premised upon the BLM's commitment to undertake (or not to take) certain specific actions.

The legal relationship between the parties was materially altered, and this alteration received a sufficient judicial imprimatur.  Cf. Li, 2007 WL 2800679 (after reviewing petitioners' opening briefs, respondent stipulated to a remand to agency for reconsideration of decision; petitioners therefore were prevailing parties); Barrios, 277 F.3d at 1134 (settlement agreement established enforceable rights).

A case similar to the present one is Californians for Alternatives to Toxics v. United States Forest Service, 2007 WL 2993132 (E.D. Calif. 2007).  A controlling Ninth Circuit decision issued while that action was pending.  The district court entered a preliminary injunction.  The Forest Service eventually withdrew the challenged Record of Decision, and the action was dismissed as moot.  The plaintiffs were deemed prevailing parties under EAJA.  They achieved the results they sought, by obtaining a preliminary injunction following which the agency withdrew the project.  "This victory was not undone by a later adverse ruling on the merits."  Id. at *3.  See also League of Wilderness Defenders-Blue Mountains Biodiversity Project v. Smith, 491 F. Supp.2d 980, 986 (D. Or. 2007) (after plaintiff obtained a preliminary injunction, Forest Service withdrew Record of

---

5  This does not consider scenarios in which the applicable law changes.  That issue is not before me today.

Decision because of defects alleged in the Complaint, thereby mooting the case; plaintiff was prevailing party under EAJA); Californians for Alternatives to Toxics v. Troyer, 2006 WL 2346324, 2006 U.S. Dist. LEXIS 56203 (E.D. Calif. 2006) (plaintiffs obtained preliminary injunction, after which agency withdrew challenged project; plaintiffs were prevailing parties); Valadez-Lopez v. Chertoff, 2007 U.S. Dist. LEXIS 54024 (N.D. Calif. 2007) (habeas petitioner was prevailing party; stipulated order granted him some relief, which respondent previously had refused, before case was mooted by his release from custody).

The Magistrate Judge's contrary conclusion relied upon two district court decisions. The Lands Council v. Kimbell, 2005 WL 2416002 (D. Id. 2005), assumed a party does not prevail unless it obtains "a judgment on the merits or a court-ordered consent decree." Correctly or not, this Circuit has rejected that view. Barrios, 277 F.3d at 1134, n.5; Carbonell, 429 F.3d at 898-99.

The other decision, BARK v. Larsen, 423 F. Supp.2d 1135 (D. Or. 2006), is well reasoned, but in tension with Carbonell. BARK also is distinguishable by its facts. In contrast to the present case, there was little activity on the merits. The complaint was filed, the parties agreed to a stay, the government later withdrew the challenged agency decision, and the parties then agreed to dismiss the action with prejudice.

Unlike Buckhannon, there is no mystery here regarding the reason for the agency's abrupt change of position. The government's letter withdrawing the Record of Decision, and the

13 - ORDER

motion to dismiss the action, leave no doubt.  Recognizing defeat was imminent, the government granted much of the relief requested by Plaintiffs.  Put another way, "the very *merit* of [Plaintiffs'] claim led the defendant to capitulate before judgment." Buckhannon, 532 U.S. at 616 (Scalia, J., concurring) (emphasis in original).  It is not a case "when the merits of the plaintiff's case remain unresolved-when, for all one knows, the defendant only 'abandon[ed] the fray' because the cost of litigation-either financial or in terms of public relations-would be too great." Id. at 616-17.  Moreover, but for this lawsuit, the timber would already have been sold and logged, and the BLM would not have agreed to additional environmental review.

The United States put Plaintiffs to the expense of litigating this action.  Only when the government was certain to lose did it concede that, on key issues, Plaintiffs's position was legally correct and the government's position legally wrong.  The government now desires to walk away and call it even.  The government's argument is analogous to a horse race in which one bettor insists upon the right to rescind his wager at any time before the horses cross the finish line.  Those are not the rules Congress established when it enacted EAJA.[6]

---

6   The promptness of the government's surrender, after concluding its litigation position was hopeless, may factor into whether the government's position was substantially justified. See United States v. Real Property at 2659 Roundhill Drive, Alamo, California, 283 F.3d 1146 (9th Cir. 2002) (government's position became unjustified when it continued to advance claim even after the law had been clarified).

I conclude that Plaintiffs are prevailing parties in this action. That does not automatically mean they recover attorney fees. The court still must evaluate whether the other statutory requirements have been met[7] and, if fees are warranted, determine the amount. The Report and Recommendation did not reach those issues. The matter therefore is returned to the Magistrate Judge for consideration of those matters.

## Conclusion

The Report and Recommendation (# 92) is not adopted. The court has subject matter jurisdiction over the fee petition (# 77). Plaintiffs are prevailing parties under EAJA. The matter is remanded to the Magistrate Judge to assess whether the "position of the United States was substantially justified" and, if fees should be awarded, the amount.

IT IS SO ORDERED.

DATED this 9th day of November, 2007.

/s/ Owen M. Panner
_____
OWEN M. PANNER
U.S. DISTRICT JUDGE

---

7 In Boody, the parties settled the attorney fee issue. Civil No. 03-3124-CL, docket # 234.